José Ernesto Janer Vilá, Petitioner, *v.* Superior Court of Puerto Rico, San Juan Part, Luis R. Polo, Judge, Respondent; Margarita Velázquez Grillo, Intervener.

No. C-62-84. Decided April 28, 1964.

*Jorge Souss* for petitioner. *Héctor González Blanes* for intervener.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

On June 30, 1954 the divorce of petitioner José Ernesto Janer Vilá and intervener Margarita Velázquez Grillo became final and the legal conjugal partnership existing between them was dissolved. This conjugal partnership was owner of certain personal and real property which remained in the possession of the petitioner, for which reason the intervener requested the appointment of a referee to take possession of the aforesaid property and manage them under the order of the court until the liquidation and delivery of property was accomplished and she also requested that an acting referee be appointed until provision was made for a permanent receivership. Ismael H. Herrero was appointed acting referee and he was authorized to take possession of the property and collect all the rents, fruits and interest yielded by said property.

On March 17, 1955 the petitioner filed a motion in the lower court seeking to set aside the appointment of the acting referee and to reinstate petitioner in the administration and management of the business, because the pro-

visional receivership decreed was causing serious prejudice to his business and to the credit, good name, and business reputation of the defendant, causing the suspension of the different lines of credit granted to the defendant by the Banco Popular de Puerto Rico. Said suspension of credit precluded the defendant from paying all the ordinary expenses of the cutting and hauling of cane, the continuation of the crop-loan contracts with the colonos and, in general, the continuation of the business established and developed by the defendant up to that time; that the petitioner was willing to present in the office of the clerk of the court a detailed statement of the aforesaid business on or before March 31 in order to proceed to the immediate and prompt liquidation of any participation that might correspond to the intervener therein; that since June 24, 1954 the petitioner had delivered to the intervener, through her attorneys, a detailed statement of the real property and he has been and is willing to proceed with its liquidation at the earliest possible date; that the right belonging to the intervener in the conjugal partnership was not jeopardized in any way and was amply guaranteed by the existence of the real property of the conjugal partnership as well as separately belonging to the defendant.

On March 17, 1955 the lower court entered an order setting aside the designation of the acting referee, reinstating defendant in the custody and disposition of the property, and ordering him to report a detailed statement of the assets and liabilities of the former conjugal partnership on or before March 31, 1955, ordering him also to permit the intervener or her representative to inspect the accounting books of said business and, lastly, ordering petitioner to post a bond for $15,000 to answer for the damages that might be caused by the petitioner to the intervener by reason of the business transactions that said petitioner might ac-

complish up to the date set for the appointment of the permanent referee, that is, April 1, 1955.

On April 1, by virtue of an express stipulation, the hearing for the permanent receivership was suspended and the intervener informed the court that the petitioner had delivered a statement of the assets and liabilities of the agricultural and commercial businesses in which the former conjugal partnership had an interest. As to a probable inventory of the corpus of the property, it would be advisable to examine the request for admission of facts filed by the intervener on July 23, 1956 and the partial answer to said request filed by the petitioner on August 1, 1956 and the supplementary answer to said request filed by the petitioner on August 22, 1956. The petition requested petitioner to admit the certainty of the following facts:

"1.—That the following real property belong to the conjugal partnership which is the object of liquidation in this case:

"(a) Lot of 2491 square meters, with two buildings, situated on Gautier Benítez Street of Caguas, known as Almacenes Johnson, acquired by deed No. 35 of March 5, 1949, before Notary Luis Morales Contreras, and recorded at folio 53 of volume 250 of Caguas;

"(b) Lot of 400 square meters on Juan Jiménez García Street of Caguas, acquired by deed No. 103 executed on April 2, 1945 before Notary Andrés Mena Latorre, recorded at folio 113 of volume 281 of Caguas, property No. 7971.

"(c) Lot of 324 square meters on Juan Jiménez García Street of Caguas, acquired by deed No. 326, executed on August 22, 1945 before Notary Andrés Mena Latorre, recorded at folio 118 of volume 281 of Caguas, property No. 7972.

"(d) Lot of 600 square meters with a house, on Juan Jiménez García Street of Caguas, known as Almacén Plá, formed by consolidation, pursuant to deed No. 659 executed on December 2, 1960 before Notary Antonio L. López, recorded at folio 235 of volume 281 of Caguas, property No. 7985.

"(e) House on municipal lot of 353 square meters at 57 Celis Aguilera Street of Caguas, acquired by deed No. 64 executed on September 29, 1952 before Notary J. E. González Quiñones, recorded at folio 55 back, volume 22 of Caguas, property No. 790.

"(f) Property of 524 square meters with three buildings on Muñoz Rivera Street of Juncos, acquired by deed No. 79 executed on December 8, 1952 before Notary Luis Ríos Algarín, recorded in the Registry of Property of Caguas at folio 232 of volume 67 of Juncos, property No. 2239.

"(g) Joint interest of 61.31 cuerdas in a farm situated in Barrio Tomás de Castro of Caguas, having an area of 343.29 cuerdas, acquired in different parcels.

"(h) Property of 80.70 cuerdas in Barrio Ceiba of Las Piedras, consisting of two parcels of land of 39.93 and 40.77 cuerdas, recorded at folios 130 and 122 back, respectively, of volume 33 of Las Piedras, in the Registry of Property of Caguas.

"(i) Property of 21.78 cuerdas situated in Barrio Turabo of Caguas, consisting of two parcels of land of 14.03 and 7.75 cuerdas, recorded at folios 61 and 47, respectively, of volume 278 of Caguas.

"(j) Property of 65.33 cuerdas situated in Barrio Quemados of San Lorenzo, recorded at folio 89 of volume 63 of San Lorenzo, in the Registry of Property of Caguas.

"2.—That the aforesaid conjugal partnership invested the amount of $39,854 in materials and labor in the reconstruction of a building situated at 45 Celis Aguilera Street of Caguas, P.R., separate property of the defendant.

"3.—That at the time he contracted marriage with the plaintiff, the separate real properties of the defendant were encumbered by mortgages, which were paid during the marriage with funds of the conjugal partnership, as follows:

"(a)—$1,540 principal and $3.89 interest on property of 45.62 cuerdas in Barrio Tomás de Castro of Caguas, P.R.

"(b)—$3,600 principal and $19.60 interest on property of 111.50 cuerdas in Barrios Tomás de Castro and Quemados of Caguas and San Lorenzo, P.R., respectively.

"(c)—$6,000 principal on urban property situated at 26 Gautier Benítez Street of Caguas, P.R.

"4.—That on March 25, 1955 the agriculture, sugar and truck businesses operated by the conjugal partnership had, according to the accounting books, the following capital, without including the assessment of trucks and farming equipment:

"(a)—Agriculture business ........................... $36,834.74
"(b)—Sugar business .................................... 30,830.13
"(c)—Truck business .................................... 5,062.45

"5.—That as a result of an examination of the books in connection with the agriculture business, the capital of said business was increased in different items as follows:

Sugar, surplus .................................................. $1,396.70
Compensation .................................................... 3,750.60
Farming equipment at cost not entered .......... 8,425.00
Premium State Insurance Fund ....................... 700.00

"6.—That on March 25, 1955 he had received rentals from urban property belonging to the conjugal partnership for the period between July 1954 and the aforesaid date amounting to $5,860 and that for the same period there were rents pending payment amounting to $1,083.33.

"7.—That during the years 1954–55 and 1955–56 he had a total of 393.28 cuerdas of sugarcane, of which 127.56 cuerdas belonged to the conjugal partnership.

"8.—That for the year 1954–55, the 393.28 cuerdas, the separate as well as the private property, that were planted with cane had a quota of 21,995 hundredweight of sugar, and that for the year 1955–56 the quota was 29,763 hundredweight of sugar.

"9.—That the average yield of the 393.28 cuerdas which were planted with cane during the years 1954–55 and 1955–56 was 35.47 tons per cuerda.

"10.—That of the 393.28 cuerdas which were planted with cane during the year 1954–55, 97.05 cuerdas were conveyed in the year 1955–56, and with the production of the remaining 296.23 cuerdas he covered the quota of 21,995 hundredweight of sugar assigned for said year 1954–55."

The partial answer to the request filed by the petitioner on August 1, 1956 admits the following facts:

"(A) As to request number one,

"(a) The facts alleged under letters b, c, d, g, h, i, and j are admitted.

"(b) The facts alleged under letter a, with the exception that the area of the lot mentioned be 2491 square meters, and it is affirmatively alleged that the area of said lot is 2421.60 square meters.

"(c) The facts alleged under letter e are admitted but it is alleged that said property is recorded at volume 221 of Caguas and not at volume 22 of said municipality.

"(d) As to the facts alleged under letter f, the defendant denies that the conjugal partnership is the owner of the property described therein. It expressly alleges that the defendant appeared to acquire said property by instructions of Zoilo Méndez Ríos, to whom title thereof lawfully belongs.

"(B) As to request number two,

"(a) The facts alleged in request number two are admitted, but it is made clear that the sum invested in materials and labor amounts to $39,584.63 and not to $39,854.

"(b) It is denied that said sum was invested in the construction of the building situated at 45 Celis Aguilera Street of Caguas, and it is affirmatively alleged that said amount was invested in the enlargement of said building.

"(C) All the facts alleged in request number three are admitted."

The supplementary answer to the request filed by petitioner on August 22, 1956 admits and denies the following facts:

"As to request number four, the defendant alleges:

"(a) He admits that according to the information available, on March 25, 1955 the capital of the agricultural business amounted to $30,394.87 and not to $36,834.74 as stated in the request, but he makes clear that said capital includes the benefit obtained in the operation of the property separately belonging to him from the dissolution of the conjugal partnership, and also, the value of the farming equipment as the same appears from the accounting books.

"(b) He admits that according to the accounting books the value of the sugar business at that time amounted to $30,830.13.

"(c) He admits that the truck business had at that time a book value of $5,062.45, but he affirmatively alleges that

said capital includes the assessment of the trucks used in the business.

"3. As to request number five, defendant alleges that as a result of an examination of the books in connection with the farming business,

"(a) He denies that the increase by reason of the value of the cane amounted to $1,396.70 and affirmatively alleges that the increase on this account amounted to $1,278.75.

"(b) He denies that the increase in capital on account of compensation from the Production Marketing Administration amounted to $3,750.60 and affirmatively alleges that said increase amounted to $3,143.89.

"(c) He denies that there was an increase in the capital amounting to $8,425 for farming equipment not included and affirmatively alleges that all the farming equipment was considered upon determining on March 25 that the amount of the agricultural business amounted to $36,834.74.

"(d) He denies the increase in capital as a result of having acquired any amount of the premium of the State Insurance Fund.

"4. As to request number six, he admits that on March 25, 1955 and from the date of the divorce decree the amount received as rental from the urban property belonging to the conjugal partnership was $5,860 and likewise he denies that for that same period the rents pending payment amounted to $1,083.33.

"5. As to request number seven, it is admitted that for the year 1954–55 the defendant had planted a total of $398.28 [*sic*] cuerdas of cane, but he denies that in the year 1955–56 he had the same amount planted and alleges on the contrary that at that time he had only planted 384.43 cuerdas. It is admitted that for both years the number of cuerdas of cane belonging to the conjugal partnership was 127.56.

"6. As to request number eight, the defendant alleges that the quota assigned on January 20, 1955 for the crop season of 1954–55 was 20,616 hundredweight of sugar and it was not until December 22 of the same year that the Secretary of Agriculture of the United States of America increased said quota to 21,995 hundredweights of sugar.

"It is admitted that the quota assigned for the year 1955–56 is 29,763 hundredweights of sugar.

"7. It is denied that the average yield of cane produced by the defendant in 1954–55 and 1955–56 was 35.47 tons per cuerda and it is affirmatively alleged that said average amounted only to 28.26 tons. To that effect it is alleged that in 1954–55, 296.23 cuerdas were cut producing 8,613.49 tons of cane, there remaining 97.05 cuerdas for transfer; that in 1955–56, 355.43 cuerdas were cut producing 9,802.85 tons, there remaining 29 cuerdas for transfer for the year 1956–57. The total number of cuerdas cut during both crop seasons is 651.65 cuerdas, with a total production of 18,416.34 tons, which gives an average of 28.26 tons per cuerda.

"8. As to request number ten, it is admitted that 97.05 cuerdas were transferred from crop season 1954–55 to the year 1955–56, and with the production of the remaining 296.23 cuerdas the quota of 20,616 hundredweights of sugar which had been assigned for that season was covered."

As it may be seen, the discrepancy between both parties as to the real property and some personal property is very little. The true controversy seems to exist in the appraisal at season time and in the final liquidation with delivery, of the three businesses which existed at the time of the dissolution of the partnership, known as "sugar business," "truck business," and "agricultural business." Some of the points in connection with these businesses are properly adjudicated by the trial court, as we shall see.

The findings of fact and conclusions of law preceding the judgment of April 20, 1959, which in reality of law are the bases for proceeding with the division of partnership, seem to have settled the following facts:

(1) The marriage contracted on July 26, 1941 between defendant José Ernesto Janer and plaintiff Margarita Velázquez Grillo was dissolved by a divorce decree which became final on June 30, 1954. This date, therefore, marks the conclusion of the conjugal partnership existing between both of them. (2) At the time of the dissolution of the marriage the conjugal partnership was owner of and operated

three businesses, a sugar business and crop loan to colonos, a transportation (trucks) and an agriculture business which consisted in the planting and harvesting of sugarcane and tobacco. (3) From the date of the dissolution of the marriage Janer continued administering and managing said businesses as he was used to doing during the existence of the conjugal partnership. Plaintiff did not intervene or participate in the administration of said businesses, nor gave her express consent to the acts and steps taken by the defendant in the administration thereof. Nor did she manifest her express disapproval of the actions of Janer or require him to permit her to intervene therein. As we have seen, on March 14, 1955, together with a complaint in which she requested the liquidation of the partnership and the division of the property belonging thereto, plaintiff, intervener herein, requested and obtained the appointment of an acting referee, and the defendant, petitioner herein, required the court to appoint him, which it did, acting referee in substitution of the former referee until the appointment of a permanent receivership. (4) The defendant has continued and still continues in charge of the administration and management of the aforesaid businesses, and the plaintiff, in turn, has made inspections and examinations of the accounting books of the businesses through their accountant Luis Rodríguez Cabrera. (5) For the present purposes, the court establishes that the net capital of the sugar business on June 30, 1956 was $80,619.58 and that at said time the business had a going concern value of $6,000; the net capital of the truck business on June 30, 1954, excluding the mobile material, was $4,000, and it was stipulated that the trucks had a value of $8,000 and since June 30, 1954 the rural properties of the conjugal partnership have been devoted to the planting of sugarcane and pasture, in the proportion of 127.56 cuerdas and 101.56 cuerdas, respectively, the average

value of lease per cuerda of the property devoted to sugar-cane being $15 annually and of the property devoted to pasture, $4 annually. (6) At the time of the dissolution (June 30, 1954), there existed 127.56 cuerdas of cane sprouts in the plantation belonging to the conjugal partner-ship, which at the rate of $20 per cuerda had a value of $2,551.20, and the net capital of the agriculture business, excluding the sprouts, was $64,008.54. (7) On June 30, 1954 the conjugal partnership had $53,000 in cash and the evidence presented by Janer to show that part of that money came from a loan which he obtained from his father, the Court does not consider it sufficient and rejects the deduction claimed.

8—It is further concluded that at the time of the dissolution of the marriage (June 30, 1954) the conjugal partnership was owner, with the assessment made for the purposes of the liquidation, of the following real property:

"1.—Urban Properties:

| | | |
|---|---|---|
| a—Almacenes Johnson | | $45,000 |
| b—57 Celis Aguilera corner Baldorioty | | 14,000 |
| c—Lot 600 square meters and building in Plá development | | 11,500 |
| d—Lot of 400 square meters and building in Plá development | | 1,800 |
| e—Lot of 324 square meters and building in Plá development | | 1,458 |

"2.—Rural Properties:

| | | |
|---|---|---|
| a—Cintrón of 44.43 cuerdas—Caguas | | 7,775.25 |
| b—1.25 cuerdas | " | 306.25 |
| c—6.00 cuerdas | " | 1,650.00 |
| d—5.00 cuerdas | " | 750.00 |
| e—3.63 cuerdas | " | 544.50 |
| f—1.00 cuerda | " | 350.00 |
| g—65.33 cuerdas | San Lorenzo | 13,077.00 |
| h—14.03 cuerdas | Caguas | 1,964.20 |
| i—7.75 cuerdas | " | 1,085.00 |
| j—39.93 cuerdas | Las Piedras | |
| k—40.7748 cuerdas | " | 28,997.80" |

In connection with said property on June 30, 1954 there were outstanding mortgage loans for a total of $15,500, distributed in the following manner: 1—Rural properties of 39.93 and 40.7748 cuerdas of San Lorenzo, $8,500 and urban property at 57 Celis Aguilera Street of Caguas $7,000, the urban properties having yielded a rent which subject to the corresponding liquidation, there existing the necessary information to make the liquidation for the period between July 1, 1954 and December 31, 1957.

9. Likewise subject to judicial conclusion there is a lot belonging separately to Janer at 45 Celis Aguilera Street of Caguas, on which, after the marriage, repairs and enlargements were made for the value of $40,000, said work being the plastering of the interior walls of the first floor, changing the doors and windows of the first floor, changing the ceiling and repairing the floor of the second flight and the construction of two additional stories of concrete, the value of the lot at the time of the dissolution of the marriage being $4,437 and the cost of renovation of the building $48,921.25, distributed in the following manner: $11,502.75 for each one of the first three stories and $14,413 the last one, and plaintiff being entitled to be recognized in the liquidation a credit of one-half of the total sum of $40,000 invested in the repair and enlargement of the building belonging separately to Janer.

10. It was likewise judicially established that the conjugal partnership had paid mortgage loans for the sum of $11,140 made by Janer prior to his marriage and that during the existence of the marriage Janer disposed of several properties belonging to him for the price of $4,275 and that the proceeds thereof was entered in the funds of the conjugal partnership, for which reason the conjugal partnership should be acknowledged a credit of $11,140, that is, the money taken by Janer to pay the mortgage loans made by him

prior to the marriage, and to Janer a credit of $4,275 for the value of several properties belonging to him separately which were added to the assets of the conjugal partnership.

Although the findings of fact and conclusions of law of April 20, 1959 may take the juridical place corresponding to the inventory and appraisal of the liquidation proceeding, they cannot be considered as a final adjudication of the question in issue. For this reason the trial judge decided to consider it as a declaration of the bases that should govern the final liquidation.

On July 6, 1960 the trial court, at the request of the party, entered an order explaining certain concepts of its former adjudication:

"Now, the liquidation which we ordered in our judgment has not been carried out because the parties have different interpretations as to its scope affecting the liquidation of the three businesses which belonged to the conjugal partnership at the time of its dissolution, June 30, 1954. The truck business and the agriculture business have continued up to the present. The sugar business and the crop loan advances to colonos was liquidated for all practical purposes on March 25, 1955, notwithstanding the fact that defendant has continued charging expenses on different accounts.

"Our findings are clear to the effect that the dissolution of the partnership on June 30, 1954 did not automatically vest the plaintiff with the right to one-half of the net assets of said businesses at that time. We repeat that even though the partnership had terminated at that time, the plaintiff is subject to the result of the liquidation of these businesses when said liquidation is made by the parties and that she is subject, as co-owner thereof, to the benefits or prejudices of the oscillations of the assets of the businesses, the increases or depreciations, the profits or losses of the common fund. That is, that if the businesses have continued, they are subject to the result of the operations accomplished since that time by the defendant as administrator of the property designated by this court.

"The foregoing does not authorize the defendant to make excessive charges as expenses of the liquidation of the sugar

business which practically terminated on March 25, 1955. No additional purchases have been made and the procedure of liquidation is limited to the collection of pending accounts, particularly the crop loan advances to colonos. We have analyzed the statements of profits and losses presented, the authenticity of which is not challenged, and we believe that plaintiff is correct in rejecting losses amounting to $22,290.38 for the period between January 1, 1955 and June 30, 1959, with exception of the following items which in our opinion constitute *reasonable* expenses of the liquidation:

| | | |
|---|---|---|
| March 26, 1955 to December 31, 1955 | | |
| Accountant fees | | $600.00 |
| January 1, 1956 to December 31, 1956 | | |
| Accountant fees | | $420.00 |
| January 1, 1957 to December 31, 1957 | | |
| Interest paid (difference between | | |
| received and paid) | | $217.34 |
| Accountant fees | | $540.00 |
| January 1, 1958 to December 31, 1958 | | |
| Interest paid (idem) | | $887.76 |
| Accountant fees | | $540.00 |
| January 1, 1959 to June 30, 1959 | | |
| Interest paid (idem) | | $546.00 |
| Accountant fees | | $270.00 |
| | | $4,021.10 |

"Insofar as the operation of the truck business and farming—sugarcane and tobacco plantations—are concerned, we believe that plaintiff should suffer the proportional part of the losses had from June 30, 1954 to the present time. This does not preclude plaintiff from auditing these operations in order to determine whether the defendant has incurred negligence or fraud in the administration.

"Specifically the net loss shown in the books in the truck business should be readjusted taking into consideration the present value of the mobile equipment and which by virtue of the accrued depreciation for the purposes of accounting it is deemed to be only $800.

"As to the agricultural business it is fair to state that the plaintiff may only suffer that part of the losses corresponding proportionately to the number of cuerdas belonging to the conjugal partnership which were devoted to the planting of cane, since she should not answer for the losses had in the operation of the properties belonging separately to the defendant or leased by him. That is the reason why we reject for the years 1957 and 1958 the rentals paid to José Gil Dávila, Justo González, and Esteban Díaz Salim.

"Finally, we wish to warn the parties to proceed without any delay to the liquidation ordered by our judgment· on the basis of the provisions contained therein and the explanations contained in this order, for which they are granted a period of sixty (60) days. In default thereof, a commissioner partitioner shall be appointed, which might cause greater expenses and delay."

By virtue of this order, petitioner herein filed on October 12, 1960 a statement of the assets and liability prepared by the accountants of both parties, pursuant to the books of Mr. Janer which showed the following shortages, as they appear related in the order óf January 24, 1961 of the trial court:

"(a) The sugar business which was declared by judgment to have a value of $86,619.58, including the going concern value, has fully disappeared, showing a negative balance of $4,202.

"(b) The truck business which had a net value of $12,000 is alleged by the plaintiff to have, pursuant to defendant's books, a negative balance of $14,057.97.

"(c) The agriculture business which at the time of the dissolution of the conjugal partnership, according to the findings of the court, had ·a net value· of $64,008.54, during defendant's administration, according to his books, has been reduced to $35,490.86; and other discrepancies pointed out by plaintiff in her motion between the value fixed by our judgment and the value given by the defendant in his books to the property.

"A hearing was set at which both parties appeared and argued extensively.

"We believe that in effect it is fair that the defendant should explain the reasons for the existence of the shortages in the statement signed by the accountants of both parties in the capital pending liquidation and, consequently, the defendant is hereby ordered to file in the office of the clerk, within the period of fifteen days, a report explaining said shortages, giving in detail the transactions made by him in connection with said property, as well as the nature of the depreciation or losses of the common fund.

"After said report is filed the court shall set, if necessary, a hearing so that the plaintiff may examine the defendant in connection therewith."

After hearing the parties the trial court entered the following order on September 7, 1962, which is here on review:

"On May 15, 1961 and in view of the fact that the defendant had not given the reasons for the existence of the shortages of the funds corresponding to the conjugal partnership, within the term granted to him to do so in our order of January 24, 1961, the court set June 2, 1961 for a hearing in which the defendant could give the proper explanations for said shortages as well as the nature of the depreciations or losses of the common fund, which is being administered by said defendant. A continuance having been requested, the court consented to set the hearing for June 9, 1961, at which the parties appeared. The defendant advised that he had committed an error in the report of September 2, 1960 as to the assets, liability and capital of the conjugal partnership until June 31, 1960, inasmuch as the shortage considered by him in the 'sugar business' which he fixed in the amount of $90,821.76 was $51,441.82, that is, that there was an erroneous charge amounting to $35,177.76. At some prior time—in the reply to the notice of the plaintiff of October 7, 1959—the defendant had already accepted that the 'agriculture business' on June 30, 1954 (date of the divorce) had a value of $64,008.54, instead of $33,613.67. Defendant further requested that he be granted a period of twenty days in which to present his written report, which he did. The plaintiff, in turn, has challenged said report.

"According to defendant's report, the latter maintains that the net value of $86,619.58 in which amount the court assessed

the 'sugar business' (on June 30, 1954) was reduced by $41,-172.57, its value being then assessed at $45,447.01. The defendant further maintains that the amount of $3,516.66 should be deducted for expenses incurred by him in the payment of entries and accounting from March 26, 1955 to June 30, 1959 and the amount of $4,021.10 granted as reasonable expenses of the liquidation in our order of July 6, 1960. He finally maintains, as to the 'sugar business' that the amount of $2,731.49 should also be deducted as additional expenses incurred in said business from July 1, 1949 to July 31, 1960.

"With respect to the 'truck business' which this court assessed at $12,000 on June 30, 1954, the defendant maintains that he has suffered a loss of $26,057.97 from July 1, 1954 to July 31, 1960, said business then showing a negative balance of $14,057.97.

"In connection with the 'agriculture business' the net value of which, on June 30, 1954, was assessed by this court at $64,008.54, the defendant alleges that there was a reduction of $28,517.68, that is, that it was reduced to $35,490.86.

"The court holds that the defendant has not proved the shortages to the satisfaction of the court, nor has he justified the expenses alleged by him. On the other hand, it is significant that in the motion of March 17, 1955, in which it was sought to remove the trustee appointed by this court, the defendant presented a motion in which, among other securities, in order to obtain his request to remain in possession of the property, he stated the following:

'
. . . . . . . .

3. The defendant is willing to present in the office of the clerk of this court a detailed statement of the business in question on or before March 31 of the current month in order that an *immediate and prompt liquidation* of any participation that may correspond to the plaintiff therein may be immediately made.

. . . . . . . .

5. The right belonging to plaintiff in the property of the conjugal partnership does not run any risk of being jeopardized and it is amply guaranteed by the existence of real property of the conjugal partnership as well as

belonging separately to the defendant.' Defendant's motion of March 17, 1955.

"WHEREFORE, the court believes that for the purposes of the liquidation of the conjugal partnership and the corresponding partition, the value of the three aforesaid businesses should remain as stated in the findings of fact of April 20, 1959, to wit, that the net value of the 'sugar business' is $86,619.58, and that only the amount of $4,021.10 should be deducted since it constitutes the reasonable expenses of the liquidation; that the net value of the 'truck business' is $12,000 (the continuation of this business not being justified, nor the non-liquidation of the rolling stock, which was its entire capital) and the net value of the 'agriculture business' is of $64,008.54. It further ratifies that the value of the urban property belonging to the conjugal partnership amounts, on June 30, 1954, to $73,758; that the value of the rural properties (on June 30, 1954) is $56,500; that the credit in favor of the conjugal partnership for the investment in the real property 45 Celis Aguilera is $40,000; that the credit in favor of the conjugal partnership for the payment of the separate debts of the defendant is $11,140; that the cash corresponding to the conjugal partnership is $53,000. It further ratifies that the liabilities on account of property tax on the urban property is $4,477.98; income tax deficiency (1951–1954) is $29,645.43; mortgage on real property is $15,500 and tax on rural property is $722.25, that is, a total liability of $50,340.66.

"Deducting this liability from the assets of the partnership, as the same is herein determined, the defendant must make good his obligation and pay to the plaintiff one-half of the balance resulting, without further delay.

"In addition of the delivery to the plaintiff of her share in the net value of the business and cash, the court orders the partition and delivery of the real property of the former partnership and holds that the benefits or rents connected therewith be determined upon the corresponding investigation of the commissioner partitioner which the court decides must be appointed to make the partition of the property and division of rents or benefits, and to carry out the adjudications, upon the parties submitting to the court the names of those persons whom they deem apt for said purpose; all without prejudice

to the final approval by this court of the partition and delivery thus ordered and of selecting, independently, any commissioner partitioner whose appointment the court deems convenient."

The petitioner adduces three grounds against the order of September 7, 1962: (1) "Because its practical effect is to set aside pronouncements rendered by the court in its judgment of April 20, 1959 and its order of July 6, 1960, notwithstanding the fact that they are final and unappealable and binding on the parties"; (2) "Because the trial court has no jurisdiction to disturb the aforesaid judgment and order even if it considers the challenge against the report as a petition in connection with the judgment or order under Rule 49.2 since at the time it was filed more than six months had elapsed after they had been rendered"; (3) Because in the event that this order has been validly rendered, the same is erroneous as to the expressions contained concerning the different businesses, which are clearly contradictory to former actions of the court and inconceivably unjustified as to the conclusion that the shortages in the capital of the business have not been satisfactorily explained.

 Before turning to consider the questions in issue in the systematic order required by the assignments of error, we must state the provisions of our Civil Code applicable to this case. Pursuant to § 105 the divorce carries with it a complete dissolution of all matrimonial ties and the division of all property and effects between the parties to the marriage. During the marriage the suppletory law of the conjugal partnership are the rules of articles of partnership (§ 1298) but after the conjugal partnership is dissolved by divorce, the suppletory law to the liquidation of said partnership are the provisions in connection with the acceptance of the inheritance on behalf of the inventory and right to deliberate (§ 1324). Pursuant to § 1316, upon the dissolution of the conjugal partnership, an inventory shall be made, which shall include specifically, for the purposes of collating

them, according to § 1317, the sums which, having been paid by the conjugal partnership, are to be deducted from the capital of the husband or of the wife, counting also the amounts of gifts and alienations which must be considered illegal or fraudulent, because of violation on the part of the husband of the prohibition to alienate real property, without the express consent of the wife, contained in § 1313. According to § 1319, after the debts, charges, and obligations of the partnership have been paid, the capital of the husband and of the wife shall be liquidated and paid insofar as the inventoried estate may reach, and according to § 1320, after the deductions from inventoried estate previously authorized—debts, charges, and obligations—have been made, the remainder of the same estate shall constitute the assets of the conjugal partnership. Section 1321 likewise establishes that the losses or deteriorations which the personal property belonging to either of the spouses may have suffered, even though by a fortuitous event—but not through fault, as stated by Manresa—shall be paid out of the conjugal property, should there be any, the net remainder of the partnership property being divided share and share alike between husband and wife, as provided by § 1322. Section 1325 provides that out of the property owned in common, support shall be given to the surviving spouse and to his or her children, pending the liquidation of the inventoried estate and until their share has been delivered to them; but it shall be deducted from their portion insofar as it exceeds what they should have received as fruits or income. It is of common knowledge by judicial interpretation that we have made this right extensive to the divorcee: *Pérez* v. *District Court*, 69 P.R.R. 4, 19 (Snyder) (1948).

With regard to making the inventory, rules for the appraisal and sale of the property and all other particulars concerning the liquidation of a conjugal partnership dissolved by divorce, which pursuant to § 1324 should be gov-

erned by the provisions of chapter 227, subchapter V of our Civil Code, concerning the acceptance of inheritance under benefit of inventory and right to deliberate, it might be convenient to point out the provisions of § 971 which provides that the inventory should begin within the thirty days following the citation of the creditors and shall be finished within sixty days more; § 974 in providing that the Superior Court may provide, at the request of the interested party during the formation of the inventory, for the administration and custody of the estate, by appointing an administrator with the necessary legal capacity who shall present a bond to be fixed by the court; § 980 provides that until all the known creditors have been paid the estate shall remain under administration and the administrator, whether it be the husband or wife or any other person, shall have as such the representation of the estate to exercise all the actions pertaining thereto; § 984 provides that whenever the sale of the inheritance is necessary it shall be made in the manner established by the law of civil procedure with regard to intestate and testamentary proceedings, and § 985 provides that if the hereditary estate should not be sufficient for the payment of the debts, the administrator shall render an account of his administration to the other spouse and to the creditors who have not been paid in full, and he shall be liable for the damages caused the estate through his fault or negligence.

As may be seen, the liquidation of the conjugal partnership implies the following operations: 1—inventory; 2—assessment—appraisal according to § 1324 which orders the reference to the rules of benefit of inventory of the inheritance; 3—liquidation, and 4—division and adjudication: II-I Puig Peña, *Tratado de Derecho Civil Español* 339–344 (*Revista de Derecho Privado*, 1953 ed.).

The problem in this case is the manner somewhat sui generis in which the different operations of the liquidation

of the dissolved conjugal partnership were carried out, without doubt, due to the mutual trust that prevailed at the commencement of the liquidation between both parties, inasmuch as the former husband had been named by the trial court as administrator. During a long period of time the former husband administers the community property on the premise that he should continue the operation of certain businesses instead of liquidating them rapidly, which is contemplated by our Civil Code, considering the peremptory terms expressly prescribed for each operation. But since the juridical instinct is always a subconscious guide which gradually complies with its irremissible duty of legality, if all the different orders rendered by the trial court are closely examined it would be understood that, essentially, the most trustworthy procedure of liquidation has been fulfilled, it being also the one that best conforms to law and to justice. Let us see.

■ 1—In the first ground adduced by the petitioner against the order of September 7, 1962 of the trial court, it is alleged that the practical purpose of said order was to set aside the pronouncements rendered by the court in its judgment of April 20, 1959 and its order of July 6, 1960, notwithstanding the fact that they were final, definitive, and binding on the parties. As we have previously stated, the findings of fact and conclusions of law of the judgment of April 20, 1959 may hold the juridical place corresponding to the inventory and appraisal in the proceeding of liquidation, but it cannot be considered as a final adjudication of the controversy. As a question of reality they did not originally produce a liquidation. For that reason the trial judge decided to consider it as a declaration of the bases that could govern the final liquidation. On the other hand, the order of July 6, 1960 is a simple explanation for the purposes of the liquidation, of some of the duties of the administrator and of some

of the expenses which seemed reasonable concerning a liquidation which had not yet been accomplished.

2—Because of the fluid state which is created by the special nature of the proceeding in operations concerning the liquidation of a dissolved conjugal partnership, particularly in the case of three going concerns which instead of going into liquidation immediately are continued by the administrator until the assets are extinguished, it is improbable at law to apply to this special proceeding the declaration of conclusiveness contemplated by Rule 49.2 of the Rules of Civil Procedure.

3—We have carefully examined the final conclusion of the order of September 7, 1962 of the trial court, and we find that it contains the explanations, rectifications, and adjudications which according to the limited powers of an administrator within a liquidation of a dissolved conjugal partnership, particularly when he acts without specific authority from the court, were necessary to do justice to the parties.

The writ issued will be quashed.